**STATE of Delaware on the relation of Bernard CAULK and Delores Caulk, his wife, Plaintiff Below, Appellant,**

**v.**

**Judge Frederick J. NICHOLS, of Magistrate Court #13, Defendant Below, Appellee.**

Supreme Court of Delaware.

June 14, 1971.

Reargument Denied June 29, 1971.

costs. The relators requested an appeal to the Superior Court without furnishing security as required by 10 Del.C. § 9578 (b). Judge Nichols refused to permit the appeal in the absence of surety on the bond, on the ground that he had no power to waive the bond requirement. Relators then instituted this mandamus action in Superior Court to compel the Justice of the Peace to allow the appeal without surety. The Superior Court decided the matter adversely to the relators, 267 A.2d 610, whereupon this appeal followed.

10 Del.C. §§ 9578(b) and 9578(d) read as follows:

"(b) The party appealing shall offer security in such sum as the justice deems sufficient to cover the judgment appealed from and the costs on the appeal. * * *

"(d) When the plaintiff is the appellant and no counterclaim is involved, such plaintiff need offer no security to cover the judgment appealed from or the costs; provided, that the costs of the proceedings before the Justice are paid before the appeal is taken and the advance deposit for costs provided in the Superior Court Rules is made."

The issues presented are whether a Justice of the Peace has the inherent power to waive the surety required by this statute and, if not, whether the requirement as applied to indigent persons violates the State and Federal Constitutions.

This Court has previously held that the provision for a bond in § 9578(b) is to "afford protection to the successful litigant —to ensure the recovery of his debt." Bernstein v. Burgess Battery Company, Del.Supr., 3 Storey 469, 171 A.2d 914 (1961). We also have held that §§ 9578 and 9579 are jurisdictional statutes governing the right of appeal from judgments entered in a Justice of the Peace Court; if they are not complied with, the Superior Court has no jurisdiction to entertain the appeal. Ademski v. Ruth, Del.Supr., 229 A.2d 837 (1967).

John S. Grady, of Community Law Service, Wilmington, for appellants.

Brian P. Murphy, Deputy Atty. Gen., Wilmington, for appellee.

CAREY and HERRMANN, Justices, and SHORT, Vice-Chancellor, sitting.

CAREY, Justice (For the majority of the Court).

The relators, Bernard Caulk and Delores Caulk, his wife, were the defendants in an action brought by their landlord, a corporation, to recover unpaid rent for the dwelling house in which they lived. The action was brought in Magistrate Court No. 13, where it was heard by Justice of the Peace Nichols, appellee herein. The amount of the judgment was $300.00, plus

It should be noted, preliminarily, that the plaintiff in the original judgment was not named as a party in Superior Court and is not a party to this appeal, notwithstanding its obvious interest. The effect of its absence, however, has not been briefed or argued by counsel, and we have deemed it advisable to overlook that question and to pass upon the issues which have been argued because of their importance and because the questions would undoubtedly again be brought before us very promptly.

It also should be mentioned that we express no opinion as to whether or not these relators are in fact paupers; we will assume, as did the Superior Court, that they are unable to furnish surety because of poverty.

Some of the cases relied upon by appellants are instances in which the parties seeking relief were financially unable to pay, or to furnish bonds with surety for the payment of, costs or transcripts. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); O'Connor v. Matzdorff, 76 Wash.2d 589, 458 P.2d 154 (1969). They hold that a person cannot be barred from filing an appeal simply because of his inability to pay or provide bond for those expenses. In those instances, any loss due to the lack of a bond would fall upon the Government or the State. Those cases are not in point because these appellants admit that they are able to pay the costs.

Finally, it should be noted that we are not presently concerned with a refusal to permit a person to institute or defend an original action. These appellants had the benefit of a trial in a Court of original jurisdiction; we are presently concerned solely with the right to appeal from the judgment.

Delaware has no statute comparable to the Federal Act, 28 U.S.C. § 1915, which authorizes the institution by paupers of an original action or an appeal, or the defense thereof, without prepayment of fees or costs or security therefor, if a Judge finds that the suit or the appeal is not frivolous, and that the allegation of proverty is true. Our attention has not been called to any statute of any jurisdiction which permits the waiving of a bond required to be given for the protection of the other party. Moreover, we have found only one case in our sister states which has permitted waiver of this kind of bond. We refer to Harrington v. Harrington, MeSupr., 269 A.2d 310 (1970), which is actually a case in which a pauper would have had no right to defend the *original* suit unless the bond were waived. The only truly pertinent decision which has come to our attention holds to the contrary. This is Alexander et al. v. Hamilton et al. (Ill.) (1970). The actions there were brought to recover the possession of realty from defaulting purchasers. The plaintiffs prevailed in the trial Court and the purchasers sought to appeal without providing statutory bonds for deprivation of the possession of the property while the litigation was going on. The Court held that the statutory requirement is jurisdictional and, in its absence, the appellate Court had no authority to entertain the appeals. It further held that the statute was not violative of any constitutional right of the defaulting purchasers.

■ The appellants contend that the Justice of the Peace has inherent power to waive the security required by § 9578. For purposes of the present case, we will assume without deciding that, if any Court of the State is permitted to waive the security, a Justice of the Peace may do so. The question we pass upon is not the identity of the Judge who may waive security, but rather whether any Judge may do so.

■ Appellant's next contention is that the statute arbitrarily discriminates against defendants vis-a-vis plaintiffs in the Justice of the Peace Courts. We cannot follow this argument. The bond is required of any appellant against whom a money judgment has been rendered in that Court. The only appellant excused from provid-

ing that bond is a losing plaintiff against whom no counterclaim was filed. Since the purpose of the bond is to guarantee payment of the judgment if it be affirmed, there is obviously no occasion to require the furnishing of such a bond by a losing plaintiff against whom no money judgment was rendered. Such a plaintiff must, before filing an appeal, pay the costs then accrued and deposit a proper amount with the Prothonotary from which the appellate costs may be paid. We see nothing discriminatory in this provision.

■ Appellants next contend that the statute discriminates against Justice of the Peace defendants vis-a-vis Superior Court defendants. It is true in this State that the loser in a Superior Court trial is not ordinarily required to post a bond in order to obtain a review by the Supreme Court. If he does not do so, however, the appeal does not stay the operation of the judgment; Blaustein v. Standard Oil Company, Del.Super., 4 Terry 238, 45 A.2d 533 (1945); to obtain a stay, a bond guaranteeing payment must be furnished. Art. 4 Del.Const. § 24, Del.C.Ann. The bond required by § 9578 does operate as a stay. Moreover, there is a difference in the nature of the appeals. Those from a Justice of the Peace are tried *de novo* in Superior Court on both the facts and the law as if there had never been a prior trial; appeals from the Superior Court are not retrials of the facts, but are limited to review of alleged errors of law. It is possible that the Legislature felt that a winning party in the original trial Court should not be subjected to the expense of an additional trial without assurance that the judgment will be paid if it is upheld. In a Justice of the Peace Court, there is no jury. Upon appeal to the Superior Court, however, either party may demand a full-fledged jury trial. Thus, a loser before a Justice of the Peace has an advantage over his counterpart in a Superior Court case, in that he has two chances to obtain a favorable decision on the evidence.

The Legislature may also have been motivated by a desire to prevent frivolous appeals since we have no statutory procedure whereby a Judge may summarily refuse to allow such appeals.

Whatever may have been the motivation for the present Act, we do not think that the differences in the requirements constitute a violation of the equal protection or due process clauses.

Appellants next contend that § 9578 is unconstitutional by discriminating on the basis of wealth. They cite Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and certain other cases dealing with requirements for prepayment or security for payment of costs or payment for transcripts. As previously indicated, our problem has nothing to do with costs or transcripts. We are not asked merely to waive a right of the State to receive its costs; we are asked to waive a right of a litigant to be guaranteed payment of a debt, if he is obliged to relitigate the case in Superior Court. We prefer to follow the rule of Alexander v. Hamilton, *supra*, and to leave it to the Legislature to determine whether any change should be made in the conditions under which an appeal may be taken from the Justice of the Peace Courts.

Appellants next contend that, by the bond requirement, they are denied due process of law because they are deprived of the fundamental right to litigate. They cite several cases which, in our opinion, are not in point. Admittedly, they have had a trial in a Court which had jurisdiction of the subject matter. We find no ground for holding that they have been deprived of a right to trial.

■ The final contention is that § 9578 is unconstitutional in that it "sets out a vague and incomprehensible standard" for establishing the amount of bond to be required. The figure set in this case is the minimum amount permitted by the statute—the amount of the judgment plus costs. It

is true that the statute vests certain discretion in the Justice. The existence of that discretion does not render the Act so vague and incomprehensible as to bring it within the category insisted upon by appellants. To require security in a grossly excessive amount would be an abuse of discretion which the Superior Court could correct. Tinley v. Frederick, Del.Super., 1 Terry 412, 11 A.2d 329 (1940). We find this argument unpersuasive.

Affirmed.

HERRMANN, Justice (dissenting).

In my view, as applied to these indigent defendants, 10 Del.C. § 9578(b) violates the Equal Protection Clause. Solely because of their financial inability to furnish a bond to secure to the plaintiff the collection of the money judgment rendered by the Justice of the Peace, the defendants are deprived of access to a jury trial and the Superior Court to which other defendants, who can afford to post such bond, have access.

The right of appeal here is the right to a trial *de novo* before a jury as in cases commenced in the Superior Court. Our system does not provide for a jury trial in the courts of justices of the peace; nor does our system provide for appellate review of proceedings in the courts of justices of the peace which are not courts of record. Therefore, the right of appeal to the Superior Court, provided by 10 Del. C. § 9578, furnishes to a defendant in a civil case before a justice of the peace his first and only opportunity for the jury trial guaranteed to him by the State and Federal Constitutions.[1] By reason of their financial inability to furnish the bond required by § 9578(b), the defendants in this case are deprived of that right and are exposed to a type of invidious discrimination based upon indigency proscribed by the Equal Protection Clause.

As applied to these indigent defendants, it seems clear to me that § 9578(b) must fall under the rationale of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), holding that indigent defendants in criminal cases must be furnished free trial transcripts to permit them to enjoy the same right of appeal as those able to pay for transcripts. There, the United States Supreme Court announced the test that controls the case before us: "There can be no equal justice where the kind of a trial a man gets depends on the money he has." This principle has grown steadily since *Griffin*: "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." Roberts v. LaVallee, 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967). It is unquestionable that those broad constitutional principles apply to civil as well as criminal cases. See Boddie v. Connecticut,[2] 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d

1. See 10 Del.C. §§ 9577–9582. The Superior Court and the justices of the peace have concurrent jurisdiction in civil actions for the recovery of a debt. The plaintiff herein, therefore, elected to try his case without a jury when he brought his action in the justice of the peace court. The defendant in a civil case, however, has no election of removal to the Superior Court. Thus the appeal route under 10 Del.C. § 9578 is the only access the defendants have to the Superior Court and a jury trial.

2. I subscribe to the views recently expressed by Justice Black, Meltzer v. Buck Le Craw & Co., 402 U.S. 954, 91 S.Ct.

1624, 29 L.Ed.2d 124 (1971) as to the scope of the *Boddie* case:

"In my view, the decision in Boddie v. Connecticut can safely rest on only one crucial foundation—that the civil courts of the United States and each of the States belong to the people of this country and that no person can be denied access to those courts, either for a trial or an appeal, because he cannot pay a fee, finance a bond, risk a penalty or afford to hire an attorney. * * *

*   *   *   *   *

"In my judgment, the crucial foundation on which Boddie rests also forbids

(1971) (citing Griffin and holding that a State is barred from denying access to its divorce courts to indigents unable to pay certain court costs); Harrington v. Harrington, Me., 269 A.2d 310 (1970) (holding violative of the equal protection guaranty statutory requirements for bonds in forcible entry and detainer cases); Lee v. Habib, 137 U.S.App.D.C. 403, 424 F.2d 891 (1970) (holding an indigent defendant entitled to a free transcript for use in an appeal from a judgment of eviction); Pasquarella v. Santos (1 Cir.) 416 F.2d 436 (1969) (holding in a rent delinquency case that a poor tenant may remove the case to a federal court without posting the removal bond required by law).

In my judgment, therefore, § 9578(b) is a denial of equal protection as applied to these defendants. Under its provisions, the financial ability to furnish a security bond determines "the kind of trial a man gets." We may not make judicial processes, including the fundamental right to jury trial, available to some but deny them to others simply because they cannot furnish a bond to secure the ultimate payment of the debt claimed.

The majority opinion distinguishes the *Griffin* case on the ground that there court costs and expenses were involved; that here a bond to protect a party plaintiff is involved. I cannot agree that the mandate of the *Griffin* case is absolved by such distinction. The discriminating effect upon the indigent defendant is the same—whether he is deprived of access to jury trial and

the Superior Court because he is too poor to pay court costs and the price of a transcript or because he is too poor to post a security bond under § 9578(b). The protective cloak of the *Griffin* rule and the Equal Protection Clause may not be made to hang upon such distinction.

The majority opinion also relies upon Alexander v. Hamilton, Ill., (1970). That case involved a judgment of possession of a house and a Forcible Entry and Detainer Statute requiring an appeal bond to secure the plaintiff from loss or damage "which the plaintiff may sustain by reason of the withholding of the premises in controversy." The adversaries were defendants who purposely defaulted on their contracts for the purchase of residence properties and plaintiffs who were sellers of the properties for whom judgments of possession were entered by the Circuit Court. There, the Illinois Supreme Court refused to hold the bond requirement a denial of equal protection as applied to indigent defendants. The determinative differences between the *Alexander* case and the case before us are these: Here, the defendants did not remain in possession of the house and the plaintiff's property is not exposed to use or damage during the appeal. This was a suit for rent money only, the only purpose of the requisite security bond being to assure to the plaintiff the payment of his claim for rent. It is noteworthy that a successful plaintiff has no such security for payment of a money judgment pending an appeal to and from other courts in this State. Moreover, in

denial of an indigent's right of appeal costs. Once the right to unhampered access to the judicial process has been established, that right is diluted unless the indigent litigant has an opportunity to assert and obtain review of the errors committed at trial. Since Boddie rejected distinctions between the civil and the criminal process in determining the permissibility of restrictions upon access to the courts, we need only apply to civil cases our long line of holdings that indigent criminals cannot because of their indigency be denied an appeal or the right to a state-furnished

record on appeal. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed. 2d 899 (1963); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); Roberts v. La-Vallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); all cited with approval in Boddie. See also Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)."

**30**

*Alexander*, the defendants had their day in the Circuit Court of Illinois, a court of general jurisdiction in which the right to jury trial was undoubtedly preserved. Here, the defendants are denied access to such court.

For the above reasons, I am unable to agree with the majority. I would hold that, as applied to these indigent defendants, 10 Del.C. § 9578(b) denies to them equal protection of the law and the right to jury trial; that, as to them, the Statute is therefore unconstitutional and void. Accordingly, I would reverse.