W. DALE WRIGHT and LILLIAN M. WRIGHT and WRIGHT SUPPLY CO., INC., a corporation of the State of Delaware, Defendants Below, Appellants, v. EDWARD A. SHAW, doing business under the name and style of Shaw Electric Co., Plaintiff Below, Appellee.

(*February* 20, 1963.)

LYNCH, J., sitting.

*Robert B. Walls, Jr.*, for Defendants Below-Appellants.

*Morton E. Evans* for Plaintiff Below-Appellee.

Superior Court for New Castle County, No. 1112, Civil Action, 1958.

LYNCH, J.:

The parties will be referred to herein and hereafter as Appellants and Appellee.

Appellee allegedly did certain electrical work for Appellants, providing labor and material in a structure in which Appellants maintained a shop. Appellants allegedly failed to make payments in full for this work and suit was filed by the Appellee before a Justice of the Peace. A hearing was had and the Justice of the Peace rendered judgment in favor of

the Appellee and against the Appellants. The appeal to this Court followed.

The transcript of the proceedings below was filed by the Appellants in this Court. A summons on appeal was issued by the Prothonotary and appropriately served. A motion to dismiss the appeal was thereafter filed by Appellee. The grounds for the motion are as follows:

"1. The transcript of the proceedings below filed herein is incorrectly captioned, in that the names of the defendants below, appellants are incomplete. The correct caption of the case as filed before the Justice of the Peace is as follows:

"Edward A. Shaw, doing business under the name and style of Shaw Electric co.

v.

W. Dale Wright and Lillian M. Wright, his wife,

and

"W. Dale Wright and Lillian M. Wright, trading as Wright Supply Mfg. Co.

and

Wright Supply Co., Inc., a corporation of the State of Delaware.

"2. The transcript of the proceedings before the Justice of the Peace filed herein does not reveal the names of the defendants against whom judgment was entered.

"3. The transcript of the proceedings before the Justice of the Peace filed herein reveals that W. Dale Wright and Lillian M. Wright, trading as Wright Supply Mfg. Co. appealed whereas the judgment was entered against W. Dale Wright and Lillian M. Wright as individuals and Wright Supply Co., Inc. so that W. Dale Wright and Lillian M. Wright trading as Wright Mfg. Co. show no right in themselves to appeal in that case.

"4. The transcript of the proceedings before the Justice of the Peace filed herein reveals that the signatures of the appellants and of the sureties were not under seal on the purported 'bond' which was filed herein.

"5. The transcript of the proceedings before the Justice of the Peace filed herein does not show that an appeal was prayed for before the Justice of the Peace by the appellants.

"6. The transcript of the proceedings before the Justice of the Peace filed herein does not show that an appeal was allowed by the Justice of the Peace if one was prayed for.

"7. The transcript of the proceedings before the Justice of the Peace filed herein reveals that there is no seal of the Justice of the Peace and the appeal should, therefore, be dismissed."

The several grounds asserted why the appeal here should be dismissed have been considered and are disposed of as follows:

1. There is no merit in the first contention. The transcript as filed is captioned:

"FROM THE COURT OF JOSEPH F. DAYTON ONE OF THE JUSTICES OF THE PEACE IN AND FOR NEW CASTLE COUNTY AND STATE OF DELAWARE

"From Judgment Docket G

Page 166

"TRANSCRIPT

"Edward A. Shaw, doing business under the name and style of Shaw Electric Company

vs.

"W. Dale Wright and Lillian M. Wright his wife, and W. Dale Wright and Lillian M. Wright, trading as Wright Supply Mfg. Company

"Action of Assumpsit, Cause of Action, Breach of Contract for the Payment of Money, Demand Three Hundred Fifty Eight Dollars and Eighty Five Cents ($358.85) with interest.

"Summons issued to Special Deputy Sherif Thomas S. Connell on July 8, 1958 and made returnable Monday the 14th day of July, A.D. 1958 at four-fifteen o'clock in the afternoon.

"Special Deputy Sheriff Returns: Served summons by leaving a copy personally with W. Dale Wright and Lillian M. Wright at their place of business which service is verified by the oath of the Special Deputy Sheriff in writing.

"And now to wit this 14th day of July, A.D. 1958 a postponement was granted until Wednesday the 16th day of July, A.D. 1958 at three thirty o'clock in the afternoon. And now to wit the 16th day of July, A.D. 1958 both parties were present and ready for trial and the hearing was held and the proofs and allegations of both parties were heard and the decision was reserved. And now to wit this 12th day of September, A.D. 1958 I give judgment in favor of the Plaintiff, Edward A. Shaw and against the Defendants, W. Dale Wright and Lillian Wright for Three Hundred Fifty Eight Dollars and Eighty Five Cents ($358.85) Debt, besides interest with Four Dollars and Ninety Cents ($4.90) Costs of Suit, besides Twenty Cents ($.20) for Mileage.

"The parties were advised of their right to take an appeal and of the time and manner in which an appeal must be taken."

It does not appear from Mr. Evans' letter (Ex. A-1 to his brief) that there was any joint liability on the part of the defendants his clients sued. The Justice of the Peace rendered judgment against W. Dale Wright and Lillian M. Wright only; he rendered no judgment as to the corporate defendant.

Some of the named defendants appealed, but the corporate defendant did not, and understandably so.

There is no rule of law requiring all persons named as defendants in an action to join in an appeal unless there may be joint liability, and hence there is no need to show in the transcript the name of the nonappealing defendants.

2. What I have said to the first contention applies exactly to the second and no more need be said about this second contention. As a matter of fact the transcript clearly shows the names of those against whom judgment was rendered.

3. Appelle's third contention is not clear. The transcript shows entry of judgment on September 12, 1958 in plaintiff's favor against W. Dale Wright and Lillian M. Wright; it further shows that on "* * * the 19th day of September A.D. 1958, the said W. Dale Wright and Lillian M. Wright [as husband and wife and] trading as Wright Supply Mfg. Co., *appeal* and * * * become surety * * *".

A judgment against a husband and wife will be a lien against property held by them jointly. There was no need for them to appeal in the name they conducted their business affairs as there was no separate entity. It was surplusage for them to appeal in both names. It can and should be stricken.

Their appeal is in conformity with the statute; consequently, I hold there is no merit in this third contention—particularly since the transcript has the "Notice of and Prayer for Allowance of an Appeal" as a part of the transcript.

Appellee's contention about the other part of this third contention, *i.e.* that the record does not show the amount of the bond was approved by the Justice is equally not clear. I invite Mr. Evans, who appears for Appellee, to note the transcript. The amount of the bond is recited in the

transcript—indicating the Justice of the Peace must have approved the amount. The statute and citation, *Townsend v. Steward*, 4 Harr. 94, are not at all apposite. Nor is *Wooley on Delaware Practice*, § 1433(c). There is no merit in this portion of this contention.

4. Appellee's fourth contention refers to "the want of a seal" on the "bond".

I have minutely examined and studied at length the provisions of Title 10 *Del. C.* § 9579. Nowhere do I find the word "bond" used in the statute—nor is there a direction that the surety or sureties "seal" the "security on appeal" as that term is set forth in and required by the statute.

I had occasion in *State, for Use of Hartnett v. Wood et al.* (Civil Actions No. 281 and 286, 1960 and No. 51 and 52, 1961 (January 26, 1962, Kent County), an unreported opinion, to make a thorough analysis of "Statutory Bonds" and "Bonds required by Statute". I ruled in those cases that it was mandatory, where a statute prescribed the form of the bond or security, for the parties to follow the form prescribed by statute.

I consider this ruling as wholly applicable here and rule that since there was no compliance with the statute there can be no basis for the contention advanced by Appellee. *Tinley v. Frederick*, 1 Terry (40 Del.) 412, 11 A. 2d 329 (Super. Ct. 1940) and compare *S & S Builders, Inc. v. Eagle Truck Transport, Inc.*, 11 Terry (50 Del.) 346, 130 A. 2d 558 (Super. Ct. 1957) both hold that parties must follow the exact terms required by the particular statute, otherwise the appeal will be subject to dismissal and the cited cases are wholly controlling. For the reasons stated I rule Appellee's fourth ground as wanting in merit.

5. Here, the appellee seeks to dismiss the appeal because the transcript does not show the Seal of the Justice of

the Peace; he cites and relies on 11 *Del. C.* § 5918; Superior Court Rule 3(c), *Del. C.; Wooley on Delaware Practice,* § 1433; *Green v. Kinney,* 2 Harr. 160 (1837); *Lewis v. Hazel,* 4 Harr. 470 (1847) and *Hill v. Ableman,* 1 Marv. 401, 41 A. 92 (1895).

The cases cited by Appellee have been very carefully analyzed; true it is they refer to the necessity of a seal of a Justice of the Peace on the transcript; further examination, however, reveals that these cases—and undoubtedly the citation from *Wooley on Delaware Practice*—were decided on the basis of prior Rules of this Court, adopted in 1836 or 1837, see 2 Harr. pages 161-166.

Rule 41 of such Rules required certification of a transcript to be made "* * * under the hand and seal of the justice * * * with whom the docket of such justice may be deposited * * *". It probably was implied therefrom that the Justice of the Peace was required to obtain and adopt a seal but no form was ever prescribed.

When this Court adopted its present Rules no reference was made by this Court to the necessity of a seal appearing on the transcript. This seems of some significance, and failure to now call for a seal must be considered in determining if the absence of a seal is fatal.

Rule 3(c) states only that "* * * an action is commenced * * * by the appellant [from a judgment rendered in a civil debt case by a Justice of the Peace] filing * * * a praecipe and a certified transcript[1] of the record * * *". No requirement is

---

[1]Appellee in his motion attacks the transcript and in his brief characterizes it as "inaccurate". It was open to Appellee under Rule 3(d) to move to amend the "transcript" as filed if it was inaccurate; Appellee could have filed an affidavit with an "accurate" transcript of the records of the Justice of the Peace, leaving to the Court to determine if the appeal taken was supported by an "accurate" transcript. A party cannot challenge the sufficiency of "a certified transcript" filed under Rule 3(c) by arguing factual matters in briefs unsupported by record facts.

made as in the 1836/1837 rules, that the certification be made "* * * under the hand and seal of the justice * * *". This requires a determination of whether there is some constitutional or statutory requirement that a Justice of the Peace have a seal.

Examination of our several Constitutions, 1776 to date, show no requirement that Justices of the Peace obtain and adopt a seal, and in particular no form of seal was ever prescribed,—down to the present date.

Study of the Indices of the 1852 Code, the 1915 Code, the 1935 Code and our present Code, adopted in 1953, of the provisions relating to the jurisdiction and conduct of business by Justices of the Peace in civil matters, fails to reveal reference to any statute prescribing and directing Justices of the Peace to procure and adopt a seal.

Section 464 of the 1852 Code, Title Fifth, Chap. XXIV, Sec. 16, made reference to the seals "of the several courts of this State" and provided such seals "shall be the seals of said courts" but no mention was made therein of seals of Justices of the Peace. Nowhere in Title Fifteenth of the 1852 Code, pertaining to Justices of the Peace, is a direction ordering Justices of the Peace to procure and adopt a seal.

A review of the statutes shows, however, summons in civil matters were to "be issued by the justice under his hand and seal".

Section 13 of Chapter XCIX of this title called for the filing of "a duly certified transcript of the docket entries of said judgment with the prothonotary of the Superior Court" if it was to become "a lien on all the real estate of the said defendant * * *",—but no references is made to the need or use of a seal thereon by the Justice of the Peace.

A seal of the Justice of the Peace was to be affixed to execution process issued by a Justice of the Peace, in the statutory forms prescribed by the statute.

A like review of the 1915 Revised Code (Title 20—pertaining to Justices of the Peace) failed to reveal any reference to any statute prescribing and directing Justices of the Peace to procure and adopt a seal. Some Courts were by statute directed to have a seal but Chapter 110 did not prescribe a seal for the Supreme Court. In Chapter 112, § 3735 reference is made to granting of writs and directing them to "be sealed".

The Chapter on Prothonotaries (Chapter 113) at § 3772 directed the Prothonotary to "certify" issuance of a *scire facias* on a mortgage" and "as provided by Section 8 of Chapter Fifty. Neither that section nor § 3772 calls for the certification to bear the seal of the Prothonotary.

At page 1727 of the 1915 Revised Code there is reference to procuring of new seals for the Superior Court.

Vol. 12 *Del. Laws*, Chapter 274, passed in 1863, and Chapter 401, passed in 1864, authorized the Prothonotary of Kent and Sussex Counties to procure "a new press and seal for [their] offices" and provided "the said seal shall be taken, adjudged and deemed to be the seal of the said Superior Court in and for [Sussex—as to Chapter 274, and] Kent [as to Chapter 401] County * * *".

The statute then directed that said seal—

"* * * shall thereafter be affixed to all writings, papers and records, where the seal of said Court is required * * *." Some doubt persists as to what records must show the affixing of such seals. True it is some sections of the Code require the seal to be affixed, but it is not complete in any sense.

It is interesting to point out that the General Assembly authorized (Vol. 19 *Del. Laws*, Chapter 60) the Prothonotary of New Castle County to proceure a new seal for his office and that said seal shall be "taken, adjudged and deemed to be the" seal of "the said Superior Court in and for New Castle County". No direction was given, however, as in Chapters

274 and 401 of Volume 12, *Laws of Delaware,* as to its being affixed to court records or "where the seal of said Court is required".

It is of further interest to note that after the present Constitution was adopted, the General Assembly in March of 1898 (Vol. 21 *Del. Laws,* Chapters 113 and 114) legislated as to Court seals. Reference is made to all our Courts, but no reference is made therein to seals for Justices of the Peace.

Consideration of the Judicial Article of our present Constitution does not bring to light any constitutional direction for use of seals, even in § 16 of Article IV, *Del. C.,* pertaining to process of Courts.

Our present Code, adopted in 1953, and the Court Rules, have several references to the seals of the Courts and to numerous agencies, but nothing is said about authorizing seals for Justices of the Peace, and again I emphasize not one word can be found as to the form of seals to be used by Justices of the Peace. Nor is this to be found in an examination of Title 10 *Del. C.,* Chapters 91 through 95, which chapters deal generally with Justices of the Peace.

Chapter 95 of Title 10 *Del. C.* for instance deals with procedure before Justices of the Peace. Title 10 *Del. C.* §§ 9501, 9502, applies to issuance of "writs, warrants and process" and summons to witnesses by them and service thereof; in Title 10 *Del. C.* §§ 9522, 9523 and 9612 refer to a "writ of summons" and it is stated it is to be issued by the Justice "under [his] hand and seal". Title 10 *Del. C.* §§ 9532 and 9612 provide the *statutory form of summons to witnesses and* the form concludes:

"Witness the hand and seal of the said Justice * * *."
No statutory form is provided in holding over and forcible entry proceedings brought before Justices of the Peace and nothing is stated in 10 *Del. C.* § 9653 as to the need for a seal on the summons which the Justice of the Peace issues in such

cases but the statutory form of warrant for delivering possession concludes—"Given under the hand and seal of said justice * * *."

The form to be used in attachment to enforce attendance of witnesses, Title 10 *Del. C.* § 9534, has a like conclusion, as do the statutory forms for Writs of Attachment for debt, Title 10 *Del. C.* § 9591 and like writs for garnishment proceedings, 10 *Del. C.* § 9594. The form to be used in distress warrants issued by Justices of the Peace, Title 10 *Del. C.* § 9539 has the same conclusion, as does the form prescribed by Title 10 *Del. C.* § 9555, applying to execution process and to writs of *venditioni exponas*, Title 10 *Del. C.* § 9565 and Title 10 *Del. C.* § 9584, relating to the statutory form for writs of *scire facias*, as well as to the statutory form for writs of *replevin*, Title 10 *Del. C.* § 9633.

References, such as I have noted, do seem to imply an intent on the part of the General Assembly that Justices of the Peace adopt seals[2] but, even assuming the fact of such an argument, there is no statutory direction as to the form of any seals to be used by Justices of the Peace, nor to their use where the statute does not expressly direct.

A study of the cases involving seals and records of Justices of the Peace clearly show that where the law requires a Justice of the Peace to have a seal, *Porter v. Haskell et al.*, 11 Me. 177, 179 (Sup. Ct. 1834); *Drake v. Tallada*, 15 Pa. Dist. R. 626 (Common Pleas Court, 1904); *Deppen v. Deibler's Admx.*, 5 Pa. Dist. & Co. R. 252 (Common Pleas Court, 1923) and *Dennis v. Walnut Grove*, 157 Miss. 797, 128 So. 557 (Sup. Ct. of Mississippi, 1930), failure of the Justice to affix his seal is fatal and requires the proceedings to be dismissed.

On the other hand, *Parker v. Gilreath*, 29 N. C. 400

[2] A seal must be shown where the statute requires it.

(Sup. Ct. 1847); *Matthews v. State,* 134 Miss. 807, 100 So. 18, (Sup. Ct., 1924) and *Murphy v. State,* 164 Miss. 296, 144 So. 699 (Sup. Ct., 1932), all are to the effect that where the law does not require Justices of the Peace to have seals, absence of a seal on one of their official court records will have no effect on the further maintenance of the proceeding.

█ The transcript in the case before me concludes:

"I, Joseph F. Dayton, one of the Justices of the Peace for the County and State aforesaid do hereby certify the foregoing to be a true and correct copy of all docket entries in the aforementioned case.

> "[s] Joseph F. Dayton
> Justice of the Peace"

Mr. Dayton impressed his Notary Public seal opposite his name.

Appellee argues that "in no way can [the use of the notarial seal] be taken to be the seal of the Justice of the Peace". But it has been demonstrated that the General Assembly has never enacted legislation requiring a Justice of the Peace to obtain and adopt any particular form of seal; true it is that in several instances statutory forms which Justices of the Peace are required to use call for a "seal", but I emphasize that no form of seal has ever been prescribed.

It is to be noted that the Supreme Court of Mississippi approved as a "seal" a "scroll" written after the name of the Justice of the Peace in the instance of a writ of attachment, which called for the Justice of the Peace to show his "seal". *Wright v. The Vesta,* 5 How. (Miss.) 152; 4 Miss. 58 (Supreme Ct., 1840). This case cites *Lowry v. Stowe,* 7 Port., Ala., 483 (Sup. Ct. 1838) as being to the same effect.

If the adoption of a scroll by a Justice of the Peace is sufficient, as has been held, I fail to see why Mr. Dayton's use of his seal as a Notary Public in lieu of an unrequired form

of seal as Justice of the Peace can matter. 79 *C. J. S.* Seals §§3 and 4. It has been held that if a seal is not necessary the seal used may be disregarded where the substantive rights of the parties are not impaired. *Stern v. Lieberman*, 307 Mass. 77, 29 N. E. 2d 839 (Sup. Jud. Ct. Mass., 1940).

Appellee points to Title 11 *Del. C.* § 5918 as applicable and dispositive. The cited section provides:

"A justice of the peace, upon request and payment or tender of the legal fee, shall make and certify, under his hand and seal, a true transcript of all the docket entries in any cause before him, or upon any record in his possession, or if specially required, a full and true copy of all the records, entries, process and papers in or touching in such cause. Such transcript or copy shall be received in evidence in any court." Appellant, on the other hand, contends this statute "governs appeal of a criminal case and has no relation to the appeal of a civil matter".

A review of the legislative history of this statutory provision reveals that by an Act of the General Assembly, passed January 29, 1825, Vol. 6 *Del. Laws*, Ch. CCLXIII, at pages 469/470 in Section 40, the General Assembly made it one of the duties of Justices of the Peace to furnish "a true transcript of all the docket entries * * * certified under the hand and seal of the justice; and such transcript * * * shall be received as evidence in any court; * * *."

When the General Assembly authorized the 1852 Code, it incorporated language of the same effect and purport in that chapter (Chapter XCVII) which pertained to the General Powers, Duties and Jurisdiction of Justices in Criminal Cases, §§ 2053-2056. No exact provision such as appeared in the original statute can be found in the chapter of the 1852 Code that concerns Justices' Jurisdiction in Civil Cases of Debt, but Section 24 *et seq.*, of Chapter XCIX of the 1852 Code gave the procedure on civil appeals from judgments in

such civil debt cases. In Section 26 of the cited chapter the then law required the appellant "to deliver a duly certified transcript of all the docket entries * * * to the prothonotary * * *". No language appears calling for use of a "seal" of the Justice of the Peace thereon.

Again, in the Revised Code of 1915, this provision continued in the chapter (Chapter 119) pertaining to General Powers, Duties and Jurisdiction in Criminal Cases as Section 39. The procedure on appeal in Chapter 121 (which refers to Justices' Jurisdiction in Civil Cases of Debt) provided in § 33 of Chapter 121 that appellant is to "deliver a duly certified transcript of all the docket entries in the case of the prothonotary * * *". Again it was not required that the Justice of the Peace impress any "seal" thereto.

Title 10 *Del. C.* § 9580 now governs appeals from judgments entered by Justices of the Peace and this Section specifically provides that appeals are to be taken "in the manner provided by the rules of the" Superior Court.

In light of what has been shown about the place of statutory citation, Title 11 *Del. C.* § 5918, relied on by Appellee, now and has assumed for more than 100 years and specifically because our General Assembly has provided the manner of taking appeals in civil debt cases brought before Justices of the Peace, it is clear that Title 11 *Del. C.* § 5918 has no relationship to this case and is not governing.

 The remaining question, if there be one, is to determine if Appellant complied with Rule 3(c), Rules of the Superior Court. That requires the filing of "a certified transcript of the record" with the Prothonotary. It has been heretofore demonstrated that Mr. Dayton did certify the transcript and there is no seal required by statute or Court Rule. It would seem that Title 10 *Del. C.* § 4308 is controlling. The cited section provides:

"A copy of any record or paper belonging to a public office, or legally in the custody of a public officer, being made under the hand of the officer and his seal of office, if there is such seal, shall be deemed to be duly certified * * *."

This seems to be in accord with the now generally accepted principles of law as they relate to certified copies. See *Doherty v. McDowell*, 276 F. 728, 730 (Dist. Ct. Maine, 1921); *Paduchik v. Mikoff*, Ohio Com. Pl., 112 N. E. 2d 69, 75 (1951) affirmed by Supreme Court of Ohio, 158 Ohio St. 533, 110 N. E. 2d 562; *Ex parte Smith*, 33 Cal. 2d 797, 205 P. 2d 662 (Sup. Ct. Cal. 1949); *Ennis v. Adkins*, 274 Ky. 121, 118 S. W. 2d 175, 177 (Ky. Ct. of Ap., 1938) and compare *Bates v. Bates*, 247 Ala. 337, 24 So. 2d 440, 442 (Ala. Sup. Ct. 1946) and *Nomikos v. Petroutsis*, 186 Misc. 710, 60 N. Y. S. 2d 802, 805 (Sup. Ct. Kings County, N. Y. 1946).

This takes care of all the objections urged by Appellee in support of his Motion to Dismiss. There being no merit in any of them the Motion to Dismiss is denied. An order may be presented effectuating the rulings made herein.

On Motion for Reargument.

Plaintiff Below-Appellee has moved fo reargument on his motion to dismiss the appeal upon these ground:

"1. That this Honorable Court erred when it said:
" 'The Justice of the Peace rendered judgment against W. Dale Wright and Lillian M. Wright only; he rendered no judgment as to the corporate defendant. Some of the named defendants appealed, but the corporate defendant did not, and understandably so.' Opinion of February 20, 1963 p. 5.

"2. That this Honorable Court erred when it said:
" 'What I have said as to the first contention applies exactly to the second and no more need be said about this second contention. As a matter of fact the transcript clearly shows the names of those against whom judgment was rendered.' *Ibid.* p. 5."

He contends—

"An examination of Exhibit A-2 appended to Appellee's principal brief reveals that the Justice of the Peace entered judgment *inter alia* against the corporation. The Magistrate's failure to include the corporate defendant in the caption of the transcript and his further failure to note the entry of judgment against the corporate defendant in the body thereof, resulted in a faulty transcript so that the appeal should be dismissed."

This Exhibit A-2 must mean Exhibit "B" and it appears to be a letter which the Justice of the Peace wrote to Mr. Evans, the attorney for Plaintiff Below-Appelee, under date of September 12, 1958, advising him of his action in the case; it has no force nor can I give it any effect otherwise than as a letter.

As stated above, when counsel referred to "Exhibit A-2" in his motion for reargument it was obvious that he was confused and in error and from the entire tone of his motion for reargument he was referring to the letter of September 12, 1958, since "Exhibit A-2" was the second page of his letter to the Justice of the Peace, written June 12, 1958—at the time he instituted the suit.

I can give no effect to the letter that Mr. Evans received from the Justice of the Peace; it is not a matter of record nor does the Justice of the Peace refer to it in the transcript. The pertinent provisions of the transcript read as follows:

"* * *. And now to wit this 12th day of September A.D. 1958 I give judgment in favor of the Plaintiff, Edward A. Shaw and against the defendants, W. Dale Wright and Lillian Wright for Three Hundred Fifty Eight Dollars and Eighty Five Cents ($358.85) Debt, besides interest with Four Dollars and Ninety Cents ($4.90) Costs of Suit, besides Twenty Cents ($.20) for Mileage."

As a matter of fact the Justice of the Peace could not have entered judgment against the "corporate defendant" since it nowhere appears in the transcript that the Justice of the Peace served the "corporate defendant". The only referance in the transcript to the matter of service and who appeared at the trial reads:

"Special Deputy Sheriff Returns: Served summons by leaving a copy personally with W. Dale Wright and Lillian M. Wright at their place of business which service is verified by the oath of the Special Deputy Sheriff in writing.

"And now to wit this 14th day of July A.D. 1958 a postponement was granted until Wednesday the 16th day of July, A.D. 1958 at three-thirty o'clock in the afternoon. And now to wit this 16th day of July, A.D. 1958 both parties were present and ready for trial and the hearing was held * * *."

What appears in the transcript is the basis for the Court's determination of the case and the contention advanced based on factual arguments made in a brief and unsupported by any record reference, is unsound as shown. The Justice of the Peace was never in a position to enter judgment against the corporate defendant, because it had not, according to the transcript, been served with process, hence there is no basis for Plaintiff Below-Appellee to argue that—

"* * *. The Magistrate's failure to include the corporate defendant in the caption of the transcript and his further failure to note the entry of judgment against the corporate defendant in the body thereof, resulted in a faulty transcript so that the appeal should be dismissed."

The Motion for Reargument is denied and an Order may be presented to that effect.